# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ABDIFATAH ABUKAR,

                    Plaintiff,

v.

REYNOLDS MACHINE CO. LLC,
and SUSSEK MACHINE COMPANY
LLC,

                    Defendants.

Case No. 19-CV-838-JPS

**ORDER**

On July 31, 2019, plaintiff Abdifatah Abukar ("Abukar") filed an amended complaint in this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin wage and hour laws, Wis. Stat. §§ 109.01, 104.01, 103.01 *et seq.*; Wis. Admin. Code §§ DWD 272.001, 274.001 *et seq.*. (Docket #16). The defendants in this case are Reynolds Machine Co., LLC ("Reynolds") and Sussek Machine Company, LLC ("Sussek") (collectively, "Defendants"). Abukar seeks to bring his FLSA claim on a class basis, which in the parlance of the FLSA is called a collective action. *See* 29 U.S.C. § 216(b). On August 13, 2019, Abukar filed a motion for conditional certification of his FLSA claim as a collective action. (Docket #17). Defendants sought a forty-five-day extension to respond to this motion so that the parties could explore a settlement. (Docket #25). The Court granted the extension, which ultimately proved fruitless. On October 18, 2019, Defendants opposed the motion for class certification, which is now fully briefed. For the reasons stated below, Abukar's motion for conditional certification will be granted.

1.      **RELEVANT FACTS**

Reynolds, now owned by Sussek, manufactures precision machinery parts such as truck axels, airplane parts, and brakes from a single plant in New Berlin, Wisconsin. Reynolds employees typically work on an hourly basis. All hourly employees are subject to the employment policies set forth in the employee handbook (the "Handbook"). Pursuant to the Handbook, all hourly employees must be prepared to begin working at the start of their shifts, which is indicated by the sound of a buzzer. Additionally, all hourly employees must receive permission before working overtime, which is compensated at a rate of one-and-a-half times their hourly wage.

Beginning on June 5, 2016, Reynolds instituted a policy that rounded its hourly workers' start and end times to thirty-minute intervals. The policy appears in the Handbook. It states, in relevant part:

> Employees are required to be at work area and start on time. Timeclock must be swiped prior to the half hour of schedule starting time. Any swiping in after the scheduled start time will be counted as the next half hour. Examples:
>
> 5:50, 5:55, 5:58, is on time.
> 6:01, 6:02, 6:03 is considered late and will be counted from the next half hour.
>
> Punching out at 4:00 p.m., 2:00 a.m., and 4:00 a.m. is considered a full schedule. Punching out before the hour is considered early and would be counted back to the prior half hour (example 3:30).
>
> There will be no overlapping of hours, i.e., 6:01 and 4:31. Timecards must be punched on, or prior to, the even hour, or half hour, and punched out in the same manner. (Docket #20-1 at 4).

According to this policy, the start and end times are not rounded to the nearest thirty-minute interval. Rather, they are rounded up or down to the interval that results in the least financial obligation for the employers. So, for example, if an employee clocked in at 6:01 a.m., Reynolds would round the start time up to 6:30 a.m., resulting in the employee working, but not getting paid, for 29 minutes. Similarly, if an employee clocked out at 2:59 p.m., Reynolds would round down to 2:30 p.m., resulting in the employee working, but not getting paid, for 29 minutes. Also under this scheme, if an employee permissibly continued working past their shift, they would not be paid overtime wages unless they worked the full 30 minute period after their shift ended. Reynolds states that any uncompensated time in the rounding period is not to be used for work—rather, it is for workers to get to their workplaces and settle in. Employees are responsible for reporting discrepancies or errors in their time sheets.

Abukar contends that employees begin work immediately upon arriving at the plant, and continue working up until the moment they clock out. Their tasks at the beginning of the day involve setting up their workspaces and obtaining tools. Their tasks at the end of the day include cleaning up their workspaces and putting tools away. All hourly employees reported to Shift Supervisors, who are responsible for setting schedules. The Shift Supervisors are not responsible for ensuring that employees who clock in early do not begin working immediately. Similarly, the Shift Supervisors are not responsible for ensuring that employees wrap up their shifts early enough to conclude their clean-up tasks within their shifts.

2.     **ANALYSIS**

    **2.1     Conditional Certification**

Conditional certification of a collective action is distinct from the procedure normally applied to class litigation under Federal Rule of Civil Procedure 23. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982). In an FLSA action, class members must "opt in to be bound, while [Rule 23 class members] must opt out not to be bound." *Id.* Conditional certification enables notification to putative class members so that they may affirmatively opt in to the collective action and class discovery may be taken. 29 U.S.C. § 216(b); *Woods*, 686 F.2d at 579–80. Once this is done, the plaintiff can move for final, full certification of the collective action, at which point the Court will "reevaluate the conditional certification 'to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'" *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (citing and quoting *Heckler v. D.K. Funding, LLC*, 313 F. Supp. 2d 777, 779 (N.D. Ill. 2007)).

For conditional certification, the plaintiff must only make "a minimal showing that others in the potential class are similarly situated," *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004), which requires no more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). It is only after the class has opted in that the Court determines whether the collective members are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, No. 10-cv-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). Thus, at this stage, Abukar must show that Reynolds "has a rounding policy that applied uniformly to all potential plaintiffs and that the policy appears to

be inconsistent with FLSA regulations." *Binissia v. ABM Indus.*, No. 13-c-1230, 2014 WL 793111, at *5 (N.D. Ill. Feb. 26, 2014).

The regulations implementing the FLSA provide that "where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work." 29 C.F.R. § 785.48(a). The regulations acknowledge that "minor differences between the clock records and actual hours worked cannot ordinarily be avoided," but seek to prevent "major discrepancies" that "raise a doubt as to the accuracy of the records of the hours actually worked." *Id*. Generally, rounding policies that go "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" are acceptable. 29 C.F.R § 785.48(b). This helps ensure that employees are "paid for all time spent in 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" 29 C.F.R. § 785.7 (citing *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). At least one district court has ruled that a policy that "always rounds up to the scheduled start time, regardless of when an employee logs in . . . is facially defective as a matter of law." *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2013 WL 3580309, *14 (S.D. Ohio July 11, 2013); *see also Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 820 (N.D. Ill. 2010) (conditionally certifying an action where plaintiffs alleged that employers' "rounding and log-out policies often caused plaintiffs to work unpaid overtime in increments of under eight minutes[.]"); *Schneider v. Union Hosp., Inc.*, No. 2:15-cv-204-JMS-DKL, 2016 WL 6037085, at *10 (S.D. Ind. Oct. 14, 2016) (conditionally certifying an

action where plaintiffs provided evidence that they were subject to a rounding policy that always rounded in favor of the employer).

Abukar contends that he and the putative collective are hourly workers at Reynolds' plant in New Berlin; that they were all subject to the above-quoted rounding policy explained in the Handbook; and that they each suffered a shortfall in compensation. He further explains that he and the other members of the putative collective were subject to the same bonus policies, attendance policies, and other policies that required the employees to be at their workstations and ready to go at the moment their shift started—suggesting that arriving early enough to prepare the workstations was mandatory, though implicit. Abukar supports his allegations with his own declaration and a declaration from another hourly employee at Reynolds, who confirms the implementation, scope, and effects of this rounding policy. Abukar has also provided the Handbook, which delineates the policy. In light of this evidence, the Court finds that Abukar has made the requisite "'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Brabazon*, 2011 WL 1131097, at *2 (quoting *Adair v. Wis. Bell, Inc.*, No. 08-cv-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008)).

Reynolds offers an array of counterarguments, none of which are persuasive at this juncture. They contend that the putative class—which consists of up to seventy individuals spanning ten jobs, several of whom no longer work for Reynolds—is simply too large and disparate for collective action purposes, and Abukar is not an appropriate representative plaintiff. While it is true that the class members have different job classifications, shifts, and supervisors, this does not seem to have any bearing on whether

the employees were all subject to the same unlawful rounding policy. Moreover, this is not a situation in which the putative class spans multiple plants across several states and implicates a variety of potential FLSA violations. *C.f. Brand v. Comcast Corp.*, No. 12-cv-112, 2012 WL 4482124, at *4 (N.D. Ill. Sept. 26, 2012) (limiting the proposed class to employees at one facility). Nor is this a case where there is no evidence of a binding policy. *C.f. Hadley v. Journal Broad. Group, Inc.*, No. 11-cv-147, 2012 WL 523752, at *2–3 (E.D. Wis. Feb. 16, 2012) (declining certification upon unsubstantiated allegations that supervisors edited time entries, where the record did not reflect a broad policy of such practices). This case entails an explicit rounding policy applied to all hourly employees at a single facility during a specific time period. The Court will assess whether the parties are, in fact, similarly situated upon Abukar's motion for final certification. *Jirak*, 566 F. Supp. 2d at 848-49.

Reynolds also argues that the FLSA violation is too speculative at this stage because there is not a reasonable showing that workers performed actual work during the rounded periods. Reynolds takes the position that, after clocking in, workers "stand[] around," chat, smoke, and read the newspaper while they wait to begin working. It is Reynolds' "expectation and understanding" that the workers only begin working at the sound of a buzzer, which indicates the start of a shift. (Docket #31 at 4). It is unclear whether this expectation is communicated to the workers, and the Court notes that "it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13 (emphasis added). At this point, the Court will not deny conditional certification because Reynolds believes its employees "stand[] around" until their shifts begin. *See Nehmelman v. Penn*

*Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 757 (N.D. Ill. 2011) ("the Court is not convinced that it would need to make significant individualized inquiries to determine whether employees in fact 'worked' during the period when they were clocked in."); *Binissia*, 2014 WL 793111, at *4 (referring to the "unremarkable proposition that [employees] typically begin working once they punch in.").

To support their contention that their rounding policy does not violate the FLSA, Reynolds has provided a declaration from one of the supervisors—also an hourly employee—who claims that he is not aware of any employees who work during the uncompensated rounding periods, or who have submitted complaints about working without pay. Rather, Reynolds contends that its rounding policy gives employees a "grace period to show up to their workplace and get settled in." (Docket #31 at 9). The Handbook does not refer to this "grace period." Abukar, in turn, has provided two declarations and a copy of the Handbook, which support his allegations that workers frequently show up before their shifts begin to prepare for work. This is sufficient to establish a potential violation for conditional certification purposes; at this juncture, the Court will not resolve issues of fact, assess credibility, or weigh evidence. *Berndt v. Cleary Bldg. Corp.*, 11-cv-791-WMC, 2013 WL 3287599, at *7 (W.D. Wisc. Jan. 25, 2013) (resolving evidentiary conflicts in plaintiff's favor on a motion for conditional certification). In short, the declarations of two workers, combined with the apparently deficient rounding policy in the Handbook, sufficiently demonstrate that the potential plaintiffs were all "victims of a common policy or plan that violated the law." *Brabazon*, 2011 WL 1131097, at *2.

As this Court has previously noted, at conditional certification, the inquiry "is 'not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated. . .with respect to their allegations that the law has been violated.'" *Id.* at *3 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). For the reasons explained above, the Court finds that the hourly employees at Reynolds' New Berlin plant have made a showing that they are similarly situated with respect to their allegations regarding the purportedly unlawful rounding policy. Reynolds may move to decertify the class if and when it is appropriate.

### 2.2    Collective Action Scope and Notice

The Court has discretion to prescribe the form, manner, and timing of notice to ensure that putative collective members receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Plaintiffs propose the following collective:

> All persons who are or have been employed by Reynolds Machine at the New Berlin, Wisconsin location and who were paid on an hourly basis at any time since June 5, 2016.

(Docket #17 at 1). Abukar provided a proposed notice to be sent to the putative class members. (Docket #17-1). He requests that Reynolds provide Collective Action counsel with an electronically formatted list of contact information for the putative collective, including first and last names, last known mailing addresses, phone numbers, email addresses, and dates of employment within ten (10) days of this order. (Docket #17 at 2). Abukar

also asks that the Court appoint Plaintiff's counsel as Collective Action Counsel; approve the form and content of the notice to be sent to the collective via U.S. mail, email, or text message within seven (7) days of receiving the collective's contact information from Reynolds; and prohibit Reynolds or its affiliates from communicating with the collective's members about the lawsuit during the pendency of the notice period. *Id.* at 1–2. Abukar further request a seventy-five (75) day opt-in period. After the period closes, Abukar will file a motion for final certification of the collective action.

Despite some initial disagreement over the terms of the notice, *see* (Docket #31 at 20–22), the parties now agree that Reynolds will provide phone numbers, email addresses, and dates of employment only as needed to deliver any undeliverable notices. (Docket #32 at 15). The parties further agree that the notice should reflect a limitations period consistent with the date of this order, not the date that the FLSA action was originally filed. *Id.* Finally, Abukar has agreed to modify the notice language to make clear that opt-ins are joined in the litigation only when their consent forms are filed with the Court. The parties do not dispute the other provisions in the notice and the Court finds that the notice is accurate and designed to be timely. *See Hoffman-La Roche*, 493 U.S. at 170.

3.    **CONCLUSION**

For the reasons stated above, the Court will grant Abukar's motion for conditional certification. In conditionally certifying this class, the Court declines to postpone its ruling until the parties have had the benefit of discovery. This case has been pending since June, the summary judgment deadline falls in January, and the Court has already granted the parties an extension of time to accommodate settlement talks. The show must go on.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for conditional certification of the FLSA collective action (Docket #17) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the parties shall confer on the proper form of the notice as directed in this order, and file a stipulation or briefs on the matter if necessary.

Dated at Milwaukee, Wisconsin, this 18th day of December, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge